Opinion by
White, P. J.
§ 676. Pleading; negligence; sufficient allegation of, in action against carrier for injury to live stock while transporting same; case stated. Appellee recovered judgment against appellant for $455 damages for injuries to a carload of mules shipped by him from Shreveport, La., to *595 Hearne, Tex. Appellee alleged in Ms petition “ that the said defendant'so negligently loaded and transported said animals that some of them were badly injured,” describing the injuries received by each. Appellant demurred specially to the petition upon the ground that the petition failed “to show wherein defendant was negligent, or what duty in relation to the matter therein mentioned was violated or omitted by defendant, or in what the alleged negligence of defendant consisted.” This special exception was overruled, and this ruling assigned as error. Held: “ Negligence on the part of the defendant is the gist of the action and must be charged in the plaintiff’s petition. It is not, howéver, absolutely necessary that it should be averred in terms, if such facts are stated as will raise a presumption of negligence. If negligence is sufficiently averred, further allegations that the negligence was wilful or 'malicious will be treated as surplus-age. It is not necessary to set out the facts constituting the negligence complained of. An allegation specifying the act constituting the injury, and alleging that it was carelessly and negligently done, is sufficient. But the act, the negligent doing of which caused the injury, must be stated. A bare allegation that the party was negligent is too general to support any evidence.” [2 Thomp. Neg. pp. 1246, 1247, § 26.] Under the rules above stated the allegations of negligence in appellee’s petition are sufficient. In substance and effect they are, that the mules were not properly loaded and transported by appellant, whereby they were injured, which injury was caused by appellant’s negligence in so improperly loading and transporting them. It was not error to overrule the special exception.
§ 677. County court; terms of; statutes in relation to, construed. The second error assigned is, that the term of court at which the case was tried is illegal, because said term of court was not created by law or by the commissioners’ court of the county under authority of law, and because more terms than the law allowed had been *596 already held that year before the, commencement of the term then pending. An objection made by appellant to the trial at the term was overruled. By bill of exceptions reserved to the ruling it appears that, on October 16, 1883, at the October called term of the commissioners’ court of Cooke county, which began on the 15th and adjourned on the 17th of said month, an order was made fixing the terms of the county court in said county as follows: “The regular terms of the county court of Cooke county for criminal business shall be the first Monday in each and every month, and the terms of the county court of Cooke county for civil and probate business the third Monday in January, 1884, and the third Monday in each alternate month thereafter.” All these terms are shown by the bill to have been regularly held thereafter, making thirteen terms of court which had met and adjourned during the year 1884 before the term then pending was opened. Held: Under the amendment to the constitution which was adopted at an election on the second Tuesday in August, 1883, and which took effect September 23, 1883, it was provided that the county court should hold at least four terms for both civil and criminal business annually as may be provided by the legislature or by the commissioners’ court of the county under authority of law, and such other terms each year as might be fixed by the commissioners’ court, etc. [Acts 18th Leg. p. 134; Sewell v. State, 15 Tex. App. 56; Wilson v. State, 15 Tex. App. 150; ante, § 289.] This amendment did not limit the power of the commissioners’ courts to act in the premises to the regular terms of the said court, as did the act of February 1, 1884. [Acts 18th Leg. Special Session, p. 36.] After the adoption of said amendment many of the commissioners’ courts acted as soon as practicable, some at regular and some at special terms of their courts. If the action had been taken after the passage of the act of February 1, 1884, then, indeed, it could only have been taken at a regular term, since that act limits such action to a “reg *597 ular term.” At the time the commissioners’ court of Cooke county acted in the matter, there was no law prohibiting such action from being had at a special term of said court. Assuming, then, that the action had at that time was legal, it could not be changed for one year from that date, because it is provided by the act of February 1, 1884, “that when the commissioners’ court shall have fixed the number of terms of the county court by an order entered of record, said court shall not change the number of terms of the county court for one year from the date of the entry of the original order fixing the terms of the county court.” This case was tried on the 18th day of September, 1884, less than one year from the date of the order of the commissioners’ court fixing the terms of the county court. It was a legal term of the county court.
§ 678. Overloading cars with live stock; liability for injuries caused by. It. is insisted by appellant’s counsel that the court erred in refusing the following requested special instructions, viz.: 1. “ A carrier of live animals is not liable for any injuries inflicted by said animals upon themselves, or each other, while in transit, unless caused by its negligence. If the animals of plaintiff were injured by their restlessness and movements in the car, or by being down and trampled upon by each other, or by bruising and skinning themselves against the sides of the car, the railroad company is not responsible for such injuries. If said injuries were caused to be inflicted upon said animals by themselves or each other, by being overloaded or crowded in the car by the shipper having placed too many animals in the same, the railroad company is not responsible therefor.” 2. “If defendant contracted for a single car, and chose to load the same with more animals than the same could properly carry, he alone was responsible for any injuries to said animals by reason of their being overcrowded in the car.”
As is truly said by appellee’s counsel in his brief, these instructions and the refusal of the court to grant a new *598 trial, because, as claimed, the verdict was contrary to the evidence, might have some merit, were it not for the fact, as shown by the evidence, that plaintiff demanded a larger car, such as he had shipped the same animals in from Gainesville to Shreveport; and had he not again protested at Longview and Palestine against having the animals transported further in the car in which they were shipped. The fact that the animals went safely from Gainesville to Shreveport in one car, and that there was an idle car on the side track at Longview of sufficient size to transport said animals, and which was refused plaintiff when he pointed out the injuries being done the animals and demanded said car, showed that defendant had the means and facilities for safely transporting said animals; and its failure to do so under these circumstances was negligence, and showed an utter disregard of the rights of plaintiff, and an indifference to the safety of his property. Under these facts the court was not called upon to give these special instructions in charge, especially since it had already instructed the jury that, if they found that “ the plaintiff himself was responsible for said damage by overcrowding said stock in the car, they would find for the defendant.”
§ 679. Judicial notice; matters embraced within; rules as to. Appellant contends that appellee was not entitled to recover because the evidence did not establish that the animals injured were ever delivered to or received by appellant, the Mo. Pac. R’y Co., for transportation. The animals were shipped at Shreveport, on the Tex. & Pac. R’y Co., to be transported to and delivered at iiearne, a portion of the route being over the I. & G. N. R. R. It was proved that the Tex. & Pac. R’y Co., the I. & G. N. R. R. Co. and the Mo. Pac. R’y Co. were all run under the same general management and officers, and known as the Missouri Pacific System. It is a rule of evidence that facts of universal notoriety need not be proved. [Taylor’s Ev. § é, note 2.] Courts will take notice of whatever is generally known within the limits of their *599 jurisdiction. [1 Greenl. Ev. § 11.] In Brown v. Piper, 91 U. S. 37, it was held that a court can take judicial notice of a thing in the common knowledge and use of the people throughout the country. In McDonald v. R. R. Co. 34 N. Y. Court of Appeals, 497, the court say: “We may judicially take notice of the fact that the vast business of inland transportation of goods in this country is carried on mainly upon similar routes formed by successive connecting lines of transit belonging to different owners, each of whom carries the goods over his own line, and delivers them to the next, who, in his. turn, takes them on till they reach the place of final destination.” [1 Whart. Ev. § 339.] The Missouri Pacific Railway System is a matter of public and general notoriety in'the state of Texas. It is part of the current history of the times that the system is now, and for some time past has been, operating some of the most important lines of railway in the state. These lines permeate and ramify the most important portions of the state. This system embraces the Mo. Pac. R’y, the central branch of the Union Pac. R. R., the M., K. & T. R’y, the St. Louis, I. M. & S. R’y, the Tex. & Pac. R’y and the I. & G. N. R. R. It is known in all the four quarters of the state, and. hundreds of the people of the state daily travel upon and use its lines. We are of opinion that courts can as safely take judicial notice of its various routes in Texas as they could of any single line running through the state,, or as they can of our principal rivers and their main tributaries; because they are matters of public notoriety, as generally known to a large mass of the people of the state as any other matters of fact or of general current history.
§ 680. Delivery of live stock to carrier; bill of lading not requisite to fix liability, when. It is claimed that the evidence is insufficient to show a delivery of the mules for transportation to the appellant. A bill of lading is not requisite to fix liability. [R. R. Co. v. Nicholson, 61 Tex. 491; ante, § 494.] Whenever a railroad company *600 receives cattle or live stock to be transported over its road from one place to another, such company assumes ’ all the responsibility of a common carrier except so far as such responsibilities may be modified by special contract. [W. & W. Con. Rep. § 1265.]
May 9, 1885.
Affirmed.